UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREW JOHN TONG,<br><br>              Plaintiff,<br><br>    v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Defendant. | CASE NO. C16-0102RAJ<br><br>ORDER |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff Andrew John Tong's Motion for Summary Judgment, Dkt. # 13, and upon Defendant Secretary of Health and Human Services's Cross Motion for Summary Judgment, Dkt. # 14. Neither party has filed a response. For the reasons stated below the Court DENIES the Plaintiff's motion and GRANTS the Defendant's the motion.

## II. BACKGROUND

Plaintiff Andrew John Tong wants to terminate his Medicare enrollment, challenging the most recent step of this prolonged process: the decision by the Medicare Appeals Council ("the Council") that Mr. Tong must remain enrolled in Medicare Part A until October, 2019 and must pay two months of outstanding premiums for his Medicare Part B coverage. Dkt. # 1; Administrative Record ("AR") 15-16. Mr. Tong claims that he is unable to use alternative insurance while he remains enrolled in Medicare. Dkt. # 1, ¶ 8.

Mr. Tong is a veteran of the United States Armed Forces. AR 34. He was injured while serving and was therefore entitled to Social Security disability benefits, also known as SSDI. *Id*. at 5, 34. Based on his receipt of SSDI, Mr. Tong also began receiving Hospital Insurance under Medicare Part A and Supplementary Medical Insurance under Medicare Part B. *Id*. at 5.

On April 4, 2011, Mr. Tong began working for Alaska Airlines, work that disqualified him from receiving Social Security Disability benefits. *Id*. at 71-74. While his work disqualified him from SSDI, the Social Security Agency informed Mr. Tong that he had been granted a trial work period, for nine months after he began working— from April, 2011 through December, 2011. *Id*. at 73. The SSA further explained that Mr. Tong was eligible for an extended period of eligibility for three years after his trial work period, beginning in January, 2012, and ending in December, 2014. *Id*. After December, 2014, the extended period of eligibility would end if Mr. Tong's income reached a predefined monthly amount, thereby qualifying as Substantial Gainful Activity,

or SGA.[1]  *Id*. at 74.  Finally, in the same letter, the SSA informed Mr. Tong that while he was no longer eligible for disability benefits, his Medicare coverage could continue.  *Id*.

On April 13, 2014, Mr. Tong requested that the SSA terminate his Medicare Part B benefits, effective May 31, 2014.  *Id*. at 5, 34.  In response, the SSA informed Mr. Tong that he owed $314.70 to cover his Medicare Part B premiums through June 30, 2014, at which point the SSA would terminate Mr. Tong's Part B enrollment.  *Id*. at 6.  On June 10, 2014, Mr. Tong requested a reconsideration of this decision, writing: "I asked that Medicare be stopped on April 8, 2014; it should have been cancelled in March 2014 when you stopped my Social Security Payment."  *Id*. (quoting AR 43).  The SSA wrote back, informing Mr. Tong that its initial decision was correct and he still owed $314.70 for Medicare premiums covering April, 2014 to June, 2014.  *Id*. (citing AR 44).

On July 10, 2014, Mr. Tong requested the termination of his Medicare Part A benefits.  *Id*. at 6, 34.  The next apparent communication from the SSA was a letter, dated August 20, 2014, where the SSA wrote that since Mr. Tong was no longer entitled to Social Security, "we are stopping your hospital insurance [Part A] coverage under Medicare.  Your hospital insurance coverage ends on the last day of December 2014.  Please destroy your Medicare card after the coverage ends."  *Id*. at 6 (citing AR 48).  This letter is in opposition to the SSA's current position and all further communications the SSA had with Mr. Tong.  *See* Dkt. # 14; AR.

---

[1] For calendar years 2011 through 2014, average monthly income in excess of $1000 presumptively indicated substantial gainful activity. See SSA Substantial Gainful Activity, https://www.ssa.gov/oact/cola/sga.html (last visited June 14, 2017).

1. Administrative Hearing

On March 9, 2015, Mr. Tong filed a timely appeal with the Office of Medicare Hearings and Appeals, requesting immediate termination of his Medicare coverage and arguing that the SSA was erroneously charging him Medicare Part B premiums for months after his coverage terminated. *Id*. at 35. On May 28, 2015, an administrative hearing was held on Mr. Tong's appeal. *See id*. at 34-97. The Administrative Law Judge ("ALJ"), Judith Showalter, considered whether (1) Mr. Tong had completed the procedure for terminating his participation in Medicare Parts A and B and (2) was required to pay $314.70 in outstanding Medicare premiums for April 2014 through June 2014. *Id*. at 35.

The ALJ found that Mr. Tong had terminated his Medicare enrollment under both Parts A and B. *Id*. at 37. The ALJ also found that Mr. Tong's Part B enrollment terminated in June, 2014 and his Part A enrollment had terminated in September, 2015. *Id*. at 37. The ALJ determined that Mr. Tong was entitled to a waiver of any outstanding Medicare premiums. *Id*. at 37.

2. Review by the Council

The SSA referred the ALJ's decision to the Medicare Appeals Council. *Id*. at 21-22. The Council found that the ALJ had applied the wrong regulations to Mr. Tong's case, applying those regulations for premium Hospital Insurance, which Mr. Tong did not have. *Id*. at 13. Applying regulations applicable to free Part A benefits, the Council determined that Mr. Tong could not waive entitlement to his Part A Hospital Insurance "without also forfeiting his entitlement to Social Security Disability Benefits and

repaying the cost of the disability benefits provided to that point." *Id*. at 14. In other words, unless he was able to repay all SSDI payments, Mr. Tong was required to remain enrolled in Medicare Part A through the end of September, 2019. *Id*. at 14. The Council also found that Mr. Tong had terminated his Medicare Part B coverage, effective May 31, 2014—not July, 2014 as the SSA suggested—meaning Mr. Tong was only required to pay Medicare Part B premiums for April and May, 2014. *Id*. at 15.

Mr. Tong, acting *pro se*, moves to reverse the decision of the Council, arguing that the 2014 termination of his Medicare Parts A and B coverage—recognized by the ALJ, but reversed by the Council—should be reinstated and he should not be required to pay additional premiums. *See* Dkt. ## 1, 13. The Secretary argues that the Council's decision should be upheld. Dkt. # 14.

### III. DISCUSSION

The Court's review of a final decision by the Secretary of the Department of Health and Human Services is very limited. "Since the federal Medicare and Social Security programs are similar, the Court reviews a Secretary's final decision in accordance with the statute that controls review of the Commissioner of Social Security decisions." *Maxmed Healthcare, Inc. v. Burwell*, 152 F. Supp. 3d 619, 624 (W.D. Tex. 2016) (citing 42 U.S.C. § 405(g) (2006)), 42 U.S.C. § 1395ff(b) (2006)). "The Secretary's decision will be affirmed unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" 5 U.S.C. § 706. "The Secretary's factual findings are conclusive if they are supported by 'substantial evidence.'" *Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 1000 (9th Cir. 2012) (quoting 42 U.S.C. §

405(g)). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997)).

### 1. Medicare Part A

Mr. Tong first seeks to terminate his enrollment in Hospital Insurance under Medicare Part A, claiming that he cannot simultaneously be enrolled in Medicare and receive benefits under Tricare—health insurance available to veterans of the United States Army. Dkt. # 13, ¶ 7.

Unfortunately, and perhaps surprisingly, there is no statutory mechanism for Mr. Tong to terminate his entitlement to Medicare Part A before October, 2019. 42 U.S.C. § 426(b); 00820.025A POMS HI; *Hall v. Sebelius*, 667 F.3d 1293 (D.C. Cir. 2012). In the analogous case of *Hall v. Sebelius*, the D.C. Circuit court began by noting the unusual nature of a case where the plaintiffs sued because they did not want government benefits, specifically the plaintiffs wished to disclaim their legal entitlement to Medicare Part A. 667 F.3d at 1294. The court analogized the plaintiffs' situation to that of "a poor citizen entitled to food stamps who is not required to take the food stamps, but nevertheless remains entitled to them." *Id*. at 1296. The court held that under the law, the plaintiffs were entitled to Medicare, whether or not they wanted the coverage. *Id*. In many ways, Mr. Tong is subject to the same prohibition on terminating his Medicare Part A entitlement, with the exception that because Mr. Tong's SSDI benefits have terminated,

his entitlement to Medicare Part A will also terminate after Mr. Tong has finished a predefined number of months of additional entitlement.

The Council accurately described Mr. Tong's journey through the several stages of Medicare Part A entitlement since he began working in 2011. AR 13-14. These stages are defined in the SSA's Program Operations Manual System ("POMS"), an SSA handbook designed for internal use by SSA employees in processing claims. 00820.025A POMS HI. First, Mr. Tong was enrolled in a trial work period for nine months, giving him time to investigate whether he was able to sustain employment in light of his disability. AR 13, 73; 00820.025A.4 POMS HI. Following the trial work period, Mr. Tong was enrolled in an extended period of eligibility, during which time he continued working, engaging in substantial gainful activity that disqualified him from receiving any further SSDI payments. AR 13, 74; 00820.025A.4 POMS HI. Finally, because Mr. Tong was engaged in substantial gainful activity before the 14th month of his extended period of eligibility, he is now enrolled in an additional 57 months of Hospital Insurance under Medicare Part A. AR 13, 74; 00820.025A.4 POMS HI. As found by the Council, this final enrollment period is set to terminate in October, 2019. AR 10.

Given the applicable regulations and Mr. Tong's work history, the Court finds that the Council correctly characterized the law and the status of Mr. Tong's entitlement to Medicare Part A.

//

//

2. Medicare Part B

Mr. Tong also challenges the Council's conclusion that he owes Medicare Part B premiums for March through April, 2014. Dkt. # 1, ¶¶ 9-10; AR 14-16. The Council found that Mr. Tong "took reasonable appropriate and timely measures" to terminate his participation in Medicare Part B. AR 14 (internal quotations omitted). On April 13, 2014, Mr. Tong requested termination of his Part B benefits, seeking a final termination date of May 31, 2014, which comports with the relevant statutory provisions regarding voluntary withdrawal from Medicare Part B. *Id*. at 54. By regulation, an individual may "at any time give [the Council] or SSA written notice that he or she no longer wishes to participate in . . . [Medicare Part B] and request disenrollment." 42 C.F.R. § 407.27(c). "[E]ntitlement ends at the end of the month after the month in which the individual files the disenrollment request." *Id*.

Because the Court finds that under the applicable regulation, Mr. Tong's Medicare Part B coverage ended in May, 2014—the termination date that Mr. Tong himself requested—the Court concludes that the Council's decision is supported by both the law and substantial evidence in the record.

//

//

//

//

//

//

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plainiff's Motion for Summary Judgment, Dkt. # 13 and **GRANTS** Defendant's Motion for Summary Judgment, Dkt. # 14.

Dated this 20th day of June, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge